UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANITA DRIVER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 4:17-CV-1607 CAS |
| v. | ) |
| | ) |
| BPV MARKET PLACE INVESTORS, L.L.C., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

In this employment discrimination action, plaintiff Anita Driver ("plaintiff") asserts that defendant BPV Market Place Investors, L.L.C.'s ("BPV") violated the Americans with Disabilities Act, 42 U.S.C. §§ 12111, et seq., when it refused to accommodate her disability, retaliated against her for seeking reasonable accommodation, and terminated her employment because of her disability. Plaintiff also alleges that BPV interfered with her rights under the Family and Medical Leave Act, 29 U.S.C. §§ 2601, et seq. The case is before the Court on defendant BPV's motion to dismiss or, in the alternative, to stay the proceedings and compel arbitration. Plaintiff opposes the motion and it is fully briefed. For the following reasons, the motion to stay the proceedings and compel arbitration will be granted and the alternative motion to dismiss will be denied.

**I. Factual Background**

BPV operates Ball Park Village, a dining and entertainment area adjacent to Busch Stadium in downtown St. Louis, Missouri. Ball Park Village opened in 2014. (Gausepohl Decl., ¶ 3.) Plaintiff was first employed by BPV from about March 2014 until September 2014, when she resigned to find work closer to her home. (Driver Decl. ¶ 4.)

BPV contracted with non-party service company Entertainment Consulting International, LLC ("ECI") to manage certain of BPV's functions, including new employee onboarding. (Gausepohl Decl. ¶ 1.) In 2014, ECI's Vice President and General Counsel, Mr. Dana Gausepohl, was responsible for preparing and maintaining BPV's human resources records. (Id. ¶ 4.) In preparation for the opening of Ball Park Village, Mr. Gausepohl attended orientation and personally witnessed BPV employees sign its Mutual Agreement to Arbitrate. (Id.) Before 2014, BPV's practice was to require its new employees to sign an arbitration agreement prior to beginning employment. (Id. ¶ 5.) During the 2014 calendar year, BPV transitioned from having employees sign hard copies to an electronic system where employees would complete all onboarding documents electronically, including arbitration agreements. (Id.)

On March 5, 2014, plaintiff electronically signed several BPV new-hire onboarding documents, including an acknowledgment of receipt of handbook, employee confidentiality agreement, and Missouri Form W-4, among other documents. (Id. ¶ 6.) Plaintiff did not electronically sign an agreement to arbitrate. Mr. Gausepohl was responsible for ensuring that new BPV employees manually executed their arbitration agreements in early March 2014. (Id. ¶ 7.)

The Mutual Agreement to Arbitrate ("Agreement") is a three-page document. (Ex. A to Doc. 31-1, Gausepohl Decl.) The Agreement is signed by plaintiff and "Jake Miller, Authorized Person" on the third page. (Id. at 3.) The Agreement is hand-dated "3/9/13" by both signatories, but the parties agree the dates written on the Agreement are erroneous and it was actually signed in March 2014. (Doc. 36-1, Driver Decl. ¶ 6; Gausepohl Decl. ¶ 11.)

The following text appears in all capital letters on the signature page of the Agreement:

> I KNOWINGLY AND FREELY AGREE TO THIS MUTUAL AGREEMENT TO ARBITRATE CLAIMS, WHICH OTHERWISE COULD HAVE BEEN BROUGHT IN COURT. I AFFIRM THAT I HAVE HAD SUFFICIENT

> TIME TO READ AND UNDERSTAND THE TERMS OF THIS AGREEMENT AND THAT I HAVE BEEN ADVISED OF MY RIGHT TO SEEK LEGAL COUNSEL REGARDING THE MEANING AND EFFECT OF THIS AGREEMENT PRIOR TO SIGNING. BY ISSUANCE OF THIS AGREEMENT, THE COMPANY AGREES TO BE BOUND BY ITS TERMS.
>
> THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.

(Ex. A at 3.)

Paragraph C of the Agreement, titled "The Arbitrator's Authority and Severability," begins near the bottom of page one and continues on page two. Paragraph C is a so-called delegation clause or provision, which is an agreement to commit to an arbitrator any threshold issues concerning the Agreement. It provides:

> *The Arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable*, except that any determination as to the enforceability of the class/collective action waiver shall be made solely by a court. If the prohibition against class/collective actions is deemed unlawful, then such action shall proceed forward in court as a collective or class action. If an arbitrator finds any other provision of this Agreement unenforceable, a court or arbitrator shall interpret or modify this Agreement, to the extent necessary, for it to be enforceable, subject to the sentence above. This Agreement shall be self-amending; meaning if by law or common law a provision is deemed unlawful or unenforceable that provision and the Agreement automatically, immediately and retroactively shall be amended, modified, and/or altered to be enforceable. The arbitrator shall have no power under this Agreement to consolidate claims and/or to hear a collective or class action.

(Ex. A at 1-2) (emphasis added).

Pages one and two of the Agreement are paginated at the bottom, and state "Page 1 of 3" and "Page 2 of 3," respectively. (Ex. A at 1-2.) At the bottom of page two is Paragraph F, "Other Provisions of this Agreement," which is immediately followed by the pagination "Page 2 of 3." The third page of the Agreement lacks a page number and begins with a sentence fragment that reads,

"service being used, the express provisions of the Agreement shall prevail." (Id. at 3.) The sentence fragment is followed by a new paragraph that states: "This Agreement, except as provided above in Paragraph A, shall be governed by and shall be interpreted in accordance with the laws of the state in which you *are or were* employed by the Company." (Id.) (emphasis added).

Plaintiff admits she signed the Agreement, but states she was only asked to sign a signature page and was not given a copy of the Agreement. (Driver Decl. ¶ 6.) Plaintiff states she had never seen the other pages attached to the Agreement and never received a hard copy of the Agreement, and she does not recall anyone explaining anything about what the Agreement meant, advising her to seek counsel before signing it, or explicitly bringing to her attention that she would be giving up any rights, such as the right to file a lawsuit. (Id.) Plaintiff states that she did not know she was subject to an arbitration agreement and did not understand what "arbitration agreement" meant until her present attorney explained it to her. (Id. ¶ 9.)

In a supplemental Declaration, ECI's Mr. Gausepohl reiterates that he attended orientation and personally witnessed BPV employees sign the Agreement (Doc. 40-1, Gausepohl Suppl. Decl. ¶ 7). Mr. Gausepohl states he explained to the employees that BPV required them to sign the Agreement, and that arbitration was "a method of dispute resolution whereby both the employees and BPV were required [to] arbitrate any legal dispute between them, which meant that both sides also waived the right to go to court to resolve any disputes." He briefly explained some of the Agreement's terms, and offered to answer any questions the employees had regarding the Agreement. Mr. Gausepohl also told the employees they did not have to sign the Agreement, but if they did not sign it they could not work for BPV. (Id. ¶ 8.)

Mr. Gausepohl states that the Agreement "was presented to employees as a complete 3-page document during the March 2014 orientation. I know this because the printing error that appears

4

on Ms. Driver's agreement also appears on the other agreements that were signed at the time." (Id. ¶ 9.) He further states:

> As a result of the printing error, part of Section F of the Mutual Agreement to Arbitrate, titled "Other Provisions of this Agreement," was inadvertently left off the copies that were presented to employees for signature.[1] In full, Section F, should state the following:
>
> > To the extent any of the provisions herein conflict with any standard rules of the arbitration service being used, the express provisions of this Agreement shall prevail.
> >
> > This Agreement, except as provided above in Paragraph A, shall be governed by and shall be interpreted in accordance with the laws of the state in which you are or were employed by the Company.

(Id. ¶ 10.) At the time the Agreement was presented to the new BPV employees in March 2014, BPV was unaware that the first line of Section F was missing. (Id. ¶ 11).

Plaintiff had a second period of employment with BPV from about April 2015 until her termination on or about April 6, 2016, after she requested reasonable accommodation due to her disability. (Driver Decl. ¶ 5.) Plaintiff states that she filled out new hire paperwork in April 2015, but was not asked to sign a arbitration agreement during her second period of employment. (Id.) Mr. Gausepohl states that plaintiff submitted only one application for employment with BPV, dated February 22, 2014, and BPV has no record of her submitting another application for employment. (Gausepohl Suppl. Decl. ¶ 5.)

## II. Procedural Background

Plaintiff filed this action pro se on June 1, 2017. Plaintiff was granted in forma pauperis status and process was ordered to issue against BPV on October 27, 2017 (Doc. 6.) On November

---

[1] Mr. Gausepohl's first Declaration stated that "a copying error . . . resulted in some of the language being cut off from page 2" of the Agreement signed by plaintiff. (Gausepohl Decl. ¶ 10.)

5

20, 2017, BPV filed a motion for dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure (Doc. 9). Plaintiff filed a motion for appointment of counsel which was granted (Doc. 17), and the case was subsequently reassigned to the undersigned (Doc. 26).

Through appointed pro bono counsel, plaintiff sought leave to file an amended complaint (Doc. 29). On March 2, 2018, BPV opposed plaintiff's motion for leave to amend (Doc. 33), and also filed the instant motion to dismiss or in the alternative to stay proceedings and compel arbitration (Doc. 31). The Court granted plaintiff leave to file an amended complaint, denied BPV's original motion to dismiss as moot, and ordered that BPV's motion to dismiss or in the alternative to stay proceedings and compel arbitration remain pending with respect to the amended complaint. (Doc. 38).

BPV did not locate a copy of the Agreement signed by plaintiff until February 2018, when an ECI paralegal obtained documents from an outside data and records management company in connection with an unrelated matter, and found the Mutual Agreements to Arbitrate signed by new BPV employees in March 2014. (Gausepohl Decl. ¶ 9.)

## III. Legal Standard

Under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1-16, agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Where there is an enforceable agreement to arbitrate, federal courts "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. These provisions reflect "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." AT&T

Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (citations and quotations omitted); see Torres v. Simpatico, Inc., 781 F.3d 963, 968 (8th Cir. 2015) (quoting Concepcion).

"Because 'arbitration is a matter of contract,' whether an arbitration provision is valid is a matter of state contract law, and an arbitration provision may be 'invalidated by generally applicable contract defenses, . . . but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" Torres, 781 F.3d at 968-69 (quoting Concepcion, 563 U.S. at 339) (internal quotations omitted). "If a valid and enforceable arbitration agreement exists under state-law contract principles, any dispute that falls within the scope of that agreement must be submitted to arbitration." Id. The Eighth Circuit has instructed it is appropriate to "ask only whether the arbitration agreement is valid and whether the dispute falls within the terms of that agreement." Id.

Under Missouri law, which the parties agree applies here, "arbitration agreements are tested through a lens of ordinary state-law principles that govern contracts, and consideration is given to whether the arbitration agreement is improper in light of generally applicable contract defenses . . . such as fraud, duress, or unconscionability." Robinson v. Title Lenders, Inc., 364 S.W.3d 505, 515 (Mo. 2012) (en banc). If a valid and enforceable arbitration agreement exists, then "the federal substantive law of arbitrability governs whether the litigants' dispute falls within the scope of the arbitration agreement." Donaldson Co., Inc. v. Burroughs Diesel, Inc., 581 F.3d 726, 731 (8th Cir. 2009). "The party seeking to compel arbitration bears the burden of proving the existence of a valid and enforceable arbitration agreement." Jackson v. Higher Educ. Loan Auth. of Mo., 497 S.W.3d 283, 287 (Mo. Ct. App. 2016) (cited case omitted).

In Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63 (2010), the Supreme Court reaffirmed the principle that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as

7

whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Id. at 70. "Disputes over the formation of the parties' arbitration agreement and its enforceability or its applicability to the dispute at issue have been considered threshold issues of arbitrability." State ex rel. Pinkerton v. Fahnestock, 531 S.W.3d 36, 43 (Mo. 2017) (en banc) (citing BG Group PLC v Republic of Arg., 134 S. Ct. 1198, 1206 (2014)). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." Rent-A-Center, 561 U.S. at 70.[2]

**IV. Discussion**

BPV moves the Court to dismiss or to compel arbitration of this action, arguing the Agreement's delegation clause requires the threshold issue of arbitrability to be decided by the arbitrator. Plaintiff opposes BPV's motion, arguing the Agreement is unenforceable and does not apply to her claims because plaintiff had two separate periods of employment with BPV, and BPV is seeking to enforce the terms of a 2014 arbitration agreement from her first period of employment to claims that arose during her second period of employment in 2016. Plaintiff also argues the Agreement lacks consideration, and both the Agreement and the delegation provision are unconscionable.

---

[2] In Rent-A-Center, the parties' agreement contained a delegation provision which stated that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." Id., 561 U.S. at 66. In opposing arbitration, Jackson challenged the validity of the parties' agreement as a whole as unconscionable, but did not specifically challenge the delegation provision. As a result, the Supreme Court enforced the delegation provision, "leaving any challenge to the validity of the Agreement as a whole for the arbitrator." Id. at 72-73.

Where there is a validly formed contract that contains a delegation provision, the Court must stay the case and refer the matter to arbitration pursuant to the contract. Rent-A-Center, 561 U.S. at 69. Here, the parties' Agreement contains a delegation provision. If it is valid, the Court must defer to it and submit the case to arbitration not only on the substantive issues, but also on threshold questions of arbitrability, which pursuant to the Agreement's terms include "any dispute relating to the interpretation, applicability, enforceability or formation of th[e] Agreement including, but not limited to any claim that all or any part of th[e] Agreement is void or voidable[.]" (Ex. A at 1.)

"There are two types of validity challenges under § 2 [of the Federal Arbitration Act]: 'One type challenges specifically the validity of the agreement to arbitrate,' and '[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.'" Rent-A-Center, 562 U.S. at 70 (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 (2006)).[3] "[O]nly the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable." Id. (citations omitted). "That is because § 2 states that a 'written provision' 'to settle by arbitration a controversy' is 'valid, irrevocable, and enforceable' without mention of the validity of the contract in which it is contained." Id. "Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." Id.

---

[3]The Supreme Court was careful to note that "[t]he issue of the agreement's 'validity' is different from the issue whether any agreement between the parties 'was ever concluded[.]'" Rent-A-Center, 561 U.S. at 70, n.2 (citing Buckeye, 546 U.S. at 444, n.1; examples of issues as to whether an agreement between parties was ever concluded include "whether the alleged obligor ever signed the contract," "whether the signor lacked authority to commit the alleged principal," and "whether the signor lacked the mental capacity to assent." Id.)

9

If the party resisting arbitration does not challenge the enforceability of a delegation provision, "the only question for a court faced with a motion to compel arbitration is whether the delegation provision clearly and unmistakably delegated authority to the arbitrator to determine issues of arbitrability." Dotson v. Dillard's, Inc., 472 S.W.3d 599, 606 (Mo. Ct. App. 2015) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942 (1995); Rent-A-Center, 561 U.S. at 70, n.1).

Here, the "written provision . . . to settle by arbitration a controversy," 9 U.S.C. § 2, that BPV asks the Court to enforce is the Agreement's delegation clause: the provision that gives the arbitrator "exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement . . . ." (Ex. A at 1.) This language is almost identical to the delegation clause of the arbitration agreement that was before the Supreme Court in Rent-A-Center. Therefore, unless plaintiff challenges the delegation clause specifically, the Court must treat it as valid under § 2 of the FAA, and enforce it under §§ 3 and 4, "leaving any challenge to the validity of the Agreement as a whole for the arbitrator." Rent-A-Center, 561 U.S. at 72; Pinkerton, 531 S.W.3d at 51 (quoting Rent-A-Center).

In this case, plaintiff does not dispute that she signed the Agreement, or that her claims fall within the scope of the Agreement. Plaintiff argues that the Agreement is unenforceable because (1) there was no valid contract formed between plaintiff and BPV for arbitration of claims that arose during her second period of unemployment in 2016; (2) the Agreement and its delegation clause are unconscionable; and (3) the purported Agreement lacks legal consideration. (Pl.'s Opp. at 2; Doc. 36.) Plaintiff further contends that these arguments must be decided by the Court, and not by an arbitrator.

10

After reviewing the record, the Court holds that an arbitrator must decide plaintiff's challenges to the Agreement. Plaintiff's challenges almost exclusively go to the Agreement as a whole, and those that do specifically address the delegation provision are without merit. Therefore, the Court must enforce the delegation provision's terms and leave plaintiff's challenges to the arbitrator for determination except as addressed herein. Rent-A-Center, 561 U.S. at 70-72; Pinkerton, 531 S.W.3d at 50-51.

Plaintiff's allegation that no valid contract was formed between her and BPV for arbitration of claims that arose during her second period of unemployment in 2016 is a challenge to the validity of the Agreement as a whole, and concerns its applicability to the instant dispute. The Agreement's delegation clause grants the arbitrator exclusive authority to resolve any dispute relating to the Agreement's applicability. (Ex. A at 1.) Because plaintiff does not challenge the delegation provision specifically, the Court must treat it as valid, and leave plaintiff's applicability challenge to the arbitrator.[4]

---

[4] If applicability were an issue for this Court to determine, the Court would hold that the Agreement survived and remained in effect following the end of plaintiff's first period of employment and applies to plaintiff's second period of employment. This is because the Agreement provides in pertinent part, "As used in this Agreement, 'Claims' means all disputes between you and the Company, including but not limited to, *all disputes arising out of your employment and the cessation of employment (including any job-related post-separation disputes)*[.]" (Ex. A at 1) (emphasis added). The Agreement also states it will be "governed by and . . . interpreted in accordance with the laws of the state in which you *are or were* employed by the Company." (Id. at 3) (emphasis added). The Agreement's broad language makes it applicable to all disputes that arise out of plaintiff's "employment and the cessation" thereof, which would include the instant case; the Agreement survives the termination of plaintiff's employment as it expressly applies to any "job-related post-separation disputes," and provides that the law of the state where plaintiff *was* employed is applicable; and the Agreement does not contain either an expiration date or a provision addressing its termination. Under comparable circumstances, courts have held that arbitration agreements apply to a second period of employment. See, e.g., King v. IBEX Global, 2015 WL 6159492, at *2 (S.D. W. Va. Oct. 20, 2015); Hoenig v. Karl Knauz Motors, Inc., 983 F.Supp.2d 952, 962-65 (N.D. Ill. 2013); Anderson v. Waffle House, Inc., 920 F.Supp.2d 685, 692-95 (E.D. La. 2013); Cummins v. Town & Country Ford, Inc., 2011 WL 1403179, at *1-3 (S.D. Ind. Apr. 13,

Plaintiff argues the Agreement lacks legal consideration, but this argument also goes to the validity of the Agreement as a whole, see Doty v. Dolgencorp, Inc., 2016 WL 1732768, at *3 (E.D. Mo. May 2, 2016), and concerns the issue of contract formation. The Agreement's delegation clause grants the arbitrator exclusive authority to resolve any dispute relating to the Agreement's applicability, enforceability, or formation. (Ex. A at 1.) Again, because plaintiff does not argue that the delegation provision itself lacks legal consideration, the Court must treat it as valid, and leave plaintiff's formation challenge to the arbitrator.

Finally, plaintiff alleges that the Agreement's delegation provision itself is unconscionable for multiple reasons. The majority of plaintiff's unconscionability arguments are directed to the Agreement as a whole and thus are for the arbitrator in the first instance under Rent-A-Center, and the rest are without merit.

"Under Missouri law, the procedural and substantive aspects of a contract 'considered together' determine conscionability." Leonard v. Delaware N. Cos. Sport Serv., Inc., 861 F.3d 727, 729 (8th Cir. 2017) (quoting Eaton v. CMH Homes, Inc., 461 S.W.3d 426, 433 (Mo. 2015) (en banc)). "Procedural unconscionability involves the contract formation process; substantive unconscionability refers to undue harshness in the terms of the contract." Id. (cited case omitted). To determine unconscionability, courts consider the totality of the circumstances. Id. (cited case omitted). "Unconscionability is 'an inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it.'" Id. (quoting Eaton, 461 S.W.3d at 432 (internal quotation marks omitted)).

---

2011); but see Frank v. 84 Components Co., 2002 WL 1364168, at *2-3 (S.D. Ind. June 18, 2002).

Plaintiff's arguments primarily address procedural unconscionability. Her main contention is that "there was no meeting of the minds with respect to the arbitration delegation clause because its terms are incomprehensible. Defendant purposefully drafted the arbitration delegation clause in extremely small font and included sixteen congested paragraphs in seven subparts on three pages of single-spaced text[.]" (Pl.'s Opp. at 11.) This argument obviously concerns the Agreement as a whole, although plaintiff asserts it concerns the delegation provision. The Agreement itself comprises sixteen paragraphs in seven subparts on three pages of text, as described in plaintiff's argument, while the delegation provision is one paragraph, in the same font size as the remainder of the Agreement, and begins at the bottom of page one and ends on page two of the Agreement.[5] Because this argument challenges the Agreement as a whole, the Court must treat the provision as valid and leave this challenge for the arbitrator.

Plaintiff makes numerous additional unconscionability arguments. Plaintiff argues there is no mutuality of obligation because of the Agreement's class action waiver, but the Class/Collective Action Waiver is contained in Paragraph B, a separate paragraph from the delegation provision, Paragraph C. "A party's challenge to another provision of the contract . . . does not prevent a court from enforcing a specific agreement to arbitrate." Rent-A-Center, 561 U.S. at 70.

Plaintiff next argues that "[t]he 2014 arbitration agreement also lacks mutuality in that the plain language seemingly does not appear to give employees a meaningful opportunity to actually opt-out of it." This argument is directed on its face to the Agreement as a whole and not to the

---

[5] As in Rent-A-Center, the parties' underlying contract here "is itself an arbitration agreement. But that makes no difference. Application of the severability rule does not depend on the substance of the remainder of the contract. . . . . Accordingly, unless [plaintiff] challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." Rent-A-Center, 561 U.S. at 72.

delegation provision. "A party's challenge to . . . the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." Rent-A-Center, 561 U.S. at 70.

Plaintiff also argues the "enforceability of the arbitration delegation clause is to be determined by the arbitrator and the mechanism for that deliberation is ambiguous, providing only that 'any authorized decision or award of the arbitrator shall be final and binding upon the parties.'" The language plaintiff quotes and objects to appears in Paragraph D, titled "The Arbitration Process," and is not part of the delegation provision, Paragraph C. Plaintiff's argument therefore challenges another provision of the Agreement, not the delegation provision, and is a matter for the arbitrator. See Rent-A-Center, 561 U.S. at 70.

Plaintiff alleges that "the purported 2014 arbitration agreement and arbitration delegation clause was a non-negotiable agreement" and BPV was in a superior bargaining position. Plaintiff states she only saw the signature page; no one discussed the three pages of the Agreement with her; she needed a job and did not knowingly agree to give up her rights to go to court; she was just above a minimum wage employee and did not have the ability to hire an attorney to review the Agreement prior to signing it; and she was required to sign the Agreement as a condition of her at-will employment.

Plaintiff's arguments that the Agreement is unconscionable because she was presented only the signature page, and some text or an entire page was omitted from the Agreement, go to the validity and enforceability of the Agreement as a whole.[6] Here, where the delegation provision

---

[6] In other portions of her brief, however, plaintiff appears to assume or concede that the Agreement was valid and enforceable and would have covered any matters that arose during her first period of employment in 2014. Plaintiff states: "[BPV] seeks to enforce the terms of a 2014 arbitration agreement from [plaintiff's] first period of employment in 2014 and compel her to arbitrate her discrimination and retaliation claims under the ADA and FMLA that arose during her second period of employment in 2016." (Pl.'s Opp. at 1.) "[BPV] maintains that this is not the

14

clearly and unmistakably provides that any dispute about the signing of the Agreement – its formation, validity, and enforceability, or any effort to set it aside – is for the arbitrator, these are issues for the arbitrator in the first instance, and not the Court. See Rent-A-Center, 561 U.S. at 70-72; Pinkerton, 531 S.W.3d at 50-51.

Applying plaintiff's remaining arguments specifically to the delegation provision, the Court finds them either inapplicable or unpersuasive. With regard to BPV's superior bargaining position, unequal bargaining power of the parties is not, in and of itself, a sufficient basis to find unconscionability. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991) ("Mere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context."); Robinson, 364 S.W.3d at 515 ("a court should not invalidate an arbitration agreement . . . simply because the parties had unequal bargaining power"). The Missouri Supreme Court has described an unconscionable contract of adhesion as one created by a "stronger party" with greater bargaining power and imposed on a "weaker party." State ex rel. Vincent v. Schneider, 194 S.W.3d 853, 857 (Mo. 2006) (en banc). In such a situation, the weaker party is often "unable to look elsewhere for more attractive contracts," and the contract terms "unexpectedly or unconscionably limit the obligations and liability" of the stronger party. Eaton, 461 S.W.3d at 432 (quoted case omitted).

---

appropriate venue to hear [plaintiff's] lawsuit under a misguided notion that a *valid arbitration agreement from 2014* ([plaintiff's] first period of employment) exists between [BPV] and [plaintiff] for her ADA and FMLA claims that arose in 2016 ([plaintiff's] second period of employment)." Id. at 2 (emphasis added). Plaintiff also asserts, "BPV cannot use the 2014 arbitration agreement from [plaintiff's] first period of employment that ended in 2014 for discrimination that took place during her second period of employment in 2016 because there is no *valid enforceable arbitration agreement that covers her second period of employment* with BPV." Id. at 6-7 (emphasis added). And, "[W]hen [plaintiff's] first period of employment ended on or about September 2014, so did the 2014 arbitration agreement." Id. at 8.

Here, nothing in the record indicates plaintiff was not free to decline to sign the Agreement and seek employment elsewhere. As a result, the fact that BPV made signing the Agreement a condition of plaintiff's employment does not render it unconscionable. See, e.g., Baker v. Science Applications Int'l Corp., 273 F. App'x 577, 579 (8th Cir. 2008) (unpublished per curiam) (upholding arbitration agreement and declining to find it a contract of adhesion under South Dakota law where, among other things, there was no indication the plaintiff could only be employed by the defendant, or could not have sought employment elsewhere); see also Stillwell v. SLH Vista, Inc., 2016 WL 5661626, at *3 (E.D. Mo. Sept. 30, 2016) (under Missouri law, an employer's requirement that a prospective employee sign an arbitration agreement to secure employment does not rise to the level of duress).

Further, the terms of the Agreement do not unconscionably limit BPV's obligations and liability, and are not substantively unconscionable. Under the Agreement, both BPV and plaintiff promise to arbitrate any dispute that they may have against the other party. (Id. ¶ A.) "The arbitrator shall have the power to award any type of legal or equitable relief available in a court of competent jurisdiction including, but not limited to, attorney's fees, to the extent such damages are available under law." (Ex. A, ¶ D.) BPV agrees to pay the arbitrator's fee, to reimburse plaintiff for any administrative filing fees that may be imposed on her to initiate arbitration, and to pay all travel, lodging, and meal costs of the arbitrator. BPV also agrees to waive any cost award to which it might be entitled against plaintiff if it prevails in arbitration. (Id. ¶ G.) These terms do not come close to meeting the Missouri unconscionability standard, by manifesting "an inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it." Eaton, 461 S.W.3d at 432.

16

Finally, plaintiff argues that permitting the arbitrator to determine the validity of the purported arbitration agreement is unconscionable because the arbitrator has a financial stake in the case remaining in arbitration. This argument is without merit. Section 2 of the FAA "establishes an equal-treatment principle: A court may invalidate an arbitration agreement based on 'generally applicable contract defenses' like fraud or unconscionability, but not on legal rules that '*apply only to arbitration* or *that derive their meaning from the fact that an agreement to arbitrate is at issue.*'" Kindred Nursing Ctrs. Ltd. P'ship v. Clark, 137 S. Ct. 1421, 1426 (2017) (emphasis added) (quoting Concepcion, 563 U.S. at 339). Thus, this Court is precluded from determining that the Agreement is unenforceable because it involves arbitration and the financial incentives that necessarily accompany arbitration. See Goolsby v. PrimeFlight Aviation Servs., Inc., 2017 WL 4570826, at *7 (W.D. Mo. Aug. 9, 2017).

**V. Conclusion**

For the foregoing reasons, the Court concludes that BPV has met its burden to prove the existence of a valid and enforceable arbitration agreement. Under Rent-A-Center v. Jackson, plaintiff's challenges to the parties' Mutual Agreement to Arbitrate are for the arbitrator to determine, because the Agreement contains a delegation provision pursuant to which the parties agreed to arbitrate gateway questions of arbitrability. BPV's alternative motion to stay and compel arbitration will be granted, and its motion to dismiss will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendant BPV Market Place Investors, L.L.C.'s alternative motion to stay the proceedings and compel arbitration is **GRANTED**. [Doc. 31]

**IT IS FURTHER ORDERED** that defendant BPV Market Place Investors, L.L.C.'s motion to dismiss is **DENIED**. [Doc. 31]

**IT IS FURTHER ORDERED** pursuant to 9 U.S.C. § 4, the parties shall proceed to arbitration in accordance with the Mutual Agreement to Arbitrate.

**IT IS FURTHER ORDERED** that this matter is **STAYED** and the Clerk of the Court is directed to administratively close the case.

**IT IS FURTHER ORDERED** that the Pro Bono Volunteer Service Panel Appointment of attorney Cyrus C. Dashtaki to represent plaintiff is now concluded, and Mr. Dashtaki's obligation to represent plaintiff is ended. The Court expresses its appreciation to Mr. Dashtaki for his service.

**IT IS FURTHER ORDERED** that this case may be reopened upon motion of either party following the completion of arbitration.

/s/ Charles A. Shaw
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  10th  day of July, 2018.